Matter of Tristen S. (Thomas S.) (2023 NY Slip Op 02363)

Matter of Tristen S. (Thomas S.)

2023 NY Slip Op 02363

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

535440
[*1]In the Matter of Tristen S. and Others, Alleged to be Neglected Children. Schuyler County Department of Social Services, Respondent; Thomas S., Appellant.

Calendar Date:March 31, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Christopher Hammond, Cooperstown, for appellant.
Steven J. Getman, County Attorney, Watkins Glen, for respondent.
Donna C. Chin, Niverville, attorney for the children.

Clark, J.
Appeal from an order of the Family Court of Schuyler County (Matthew C. Hayden, J.), entered April 8, 2022, which, in a proceeding pursuant to Family Ct Act article 10, among other things, released two of the subject children to the nonrespondent parent.
Respondent and respondent's wife (hereinafter the wife) are the parents of one child (born in 2018; hereinafter the youngest child). Respondent is also the father of two other minor children (born in 2013 and 2015; hereinafter the older children) who resided with respondent and the wife. In March 2021, petitioner received a report that respondent and the wife were involved in a domestic altercation, and the wife and the youngest child were treated at the hospital for some injuries. Petitioner commenced the instant neglect proceeding alleging that respondent and the wife engaged in numerous incidents of domestic violence, some of which occurred in front of one or more of the children, and that they abused illicit substances.[FN1] Family Court issued a temporary order of protection prohibiting respondent from having contact with the children unless he was under the supervision of a supervisor approved by petitioner. Respondent's father (hereinafter the grandfather) was approved as a supervisor, and, under his supervision, the older children initially remained in respondent's home. However, soon after, the older children were removed from respondent's home and temporarily placed in the care of their mother. Following the March 2021 incident, the wife began residing with her mother (hereinafter the grandmother), and the court granted the wife temporary primary physical custody of the youngest child. The wife also filed a family offense petition, and the court issued a temporary order of protection directing respondent to stay away from the wife. Then, in July 2021, the youngest child was formally removed from the wife's care and placed in the care of the grandmother and the wife's sister (hereinafter the aunt), with whom the wife continued to reside in the grandmother's home.
A fact-finding hearing on the neglect petition against respondent commenced in September 2021. During the second day of the hearing, the parties placed an agreement on the record through which respondent consented to a finding of neglect. Consequently, Family Court found that the allegations in the neglect petition had been proved and that respondent had neglected the subject children, and the matter was scheduled for a dispositional hearing in February 2022. However, in early December 2021, Family Court temporarily suspended respondent's visits with the children due to allegations that respondent had violated the temporary orders of protection on several occasions. During an appearance in mid-December 2021, Family Court granted petitioner's request to require respondent's visits with the children to occur in a professionally supervised setting, and the court issued a new temporary order to that effect. The matter proceeded to a dispositional [*2]hearing, after which Family Court continued placement of the youngest child with the grandmother, released the older children to the care of their mother and required that respondent's visits with the children take place in a professional setting, supervised by a professional. Respondent appeals, as limited by his brief, from the parts of the dispositional order pertaining to the older children.
Initially, inasmuch as petitioner contends that the instant appeal from the dispositional order has been rendered moot by the issuance of a subsequent permanency hearing order, the older children were not placed but, rather, released to their mother — a nonrespondent parent — and, as such, are not subject to permanency planning hearings (see Family Ct Act § 1086; Matter of Annamae [Morgan W.], 58 Misc 3d 892, 896 n 6 [Fam Ct, Oswego County 2017, Seager, J.]; compare Family Ct Act §§ 1052 [a] [ii]; 1054, with Family Ct Act §§ 1052 [a] [iii]; 1055).[FN2] "A dispositional order in a neglect proceeding must reflect a resolution consistent with the best interests of the children after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record" (Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1079-1080 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 912 [2022]; see Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d 961, 966 [3d Dept 2020]). Further, "[t]he determination of whether visitation should be supervised is a matter left to Family Court's sound discretion and it will not be disturbed as long as there is a sound and substantial basis in the record to support it" (Matter of Isaac Q., 53 AD3d 731, 731 [3d Dept 2008] [internal quotation marks and citations omitted]; accord Matter of Kaleb U. [Heather V.-Ryan U.], 77 AD3d 1097, 1100 [3d Dept 2010]).
On appeal, respondent contends that the caseworker's testimony was inconsistent with the testimony of the aunt, and that, because Family Court found the caseworker credible and relied on her testimony, the order on appeal is not supported by a sound and substantial basis.[FN3] During the hearing, petitioner's caseworker testified in petitioner's case-in-chief. Respondent testified on his own behalf and proffered the testimony of his mental health therapist and his substance abuse counselor. Petitioner then called the aunt as a rebuttal witness.
As respondent correctly notes, the testimonies provided by the caseworker and the aunt have some inconsistencies. Throughout her testimony, the caseworker admitted that her knowledge regarding various incidents was predicated upon information provided by the aunt, the grandmother, the wife, the grandfather, respondent's brother and even respondent himself. Notably, "hearsay is permissible when searching for a child's best interest[s] at the dispositional stage" (Matter of Chelsea K., 15 AD3d 794, 795 [3d Dept 2005], lv dismissed 4 NY3d 869 [2005]; see Family Ct Act § 1046 [c]; Matter [*3]of Elias QQ. [Stephanie QQ.], 72 AD3d 1165, 1167 [3d Dept 2010]). Regarding an incident in July 2021, the caseworker and the aunt consistently testified that while the wife and the youngest child were outside the grandmother's home, respondent's brother pulled up and took the youngest child with him. In time, the caseworker learned that the wife had contacted respondent and expressed fear that the youngest child would be placed in foster care, and that the two planned the feigned kidnapping to prevent that from happening. Although respondent denied such a motivation, he admitted that the wife asked him to have his brother pick up the youngest child, and that he did so.
The caseworker and the aunt also testified consistently as to other incidents in November 2021. Both testified that the wife convinced the aunt to drive her to respondent's home, purportedly to pick up the youngest child, despite a routine where the grandfather would drive the child back to the grandmother's home. Although the aunt testified that she was unsure with whom the wife interacted inside, the caseworker reported that the aunt and the wife had both told her that respondent had been texting the wife asking her to come to his home and that the wife had interacted with him there. Respondent admitted that the wife arrived at his home — where the older children were present — but he asserted that she dropped by unannounced, that the older children let her in and that he locked himself in his bedroom to avoid having contact with her.
Contrary to respondent's position, Family Court was not required to discount the caseworker's testimony. Although her testimony was not in complete lockstep with the aunt's, their accounts of various incidents were largely consistent, and Family Court found that respondent's alternative explanations "strained credulity." Regardless, to the extent that comparing the testimonies of the caseworker and the aunt reveal some inconsistencies, Family Court resolved these and we defer to its credibility determinations (see Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1172 [3d Dept 2019]; Matter of Penny Y. [Roxanne Z.], 129 AD3d 1117, 1118 [3d Dept 2015]; Matter of Jesse XX. [Marilyn ZZ.], 69 AD3d 1240, 1243 [3d Dept 2010]).
Respondent's treatment providers also testified regarding respondent's engagement in treatment. Respondent's substance abuse counselor testified that respondent began engaging in treatment in March 2021 and successfully completed treatment in September 2021. Thereafter, respondent had met with a counselor or peer once per month until December 2021, when he was deemed discharged. The counselor testified that respondent submitted to numerous scheduled drug screens during treatment and that he only had one "inappropriate" test for methamphetamine in March 2021.[FN4] However, she also admitted that these drug screens were not monitored and that his last screen was in November 2021. The caseworker testified that respondent often declined [*4]to provide randomized drug screens, and that he had declined to provide any drug screens since November 2021.
Respondent's therapist testified that respondent began engaging in mental health treatment in late December 2021. As of February 2022, respondent had only attended two of the six scheduled sessions. The therapist testified that he was still establishing rapport with respondent. Respondent, who testified in March 2022, asserted that he had become more engaged in mental health treatment in the recent weeks due to the recent death by suicide of his adult son. Respondent also testified that he had just attended an introductory parenting class, and that he planned to attend further parenting classes.
As to defendant's visits with the older children, respondent complained that he had only seen them once since December 2021, when Family Court began to require his visits to occur in a professional setting. The caseworker admitted that there were certain difficulties in setting this up, as the older children and their mother resided approximately two hours away. However, the caseworker asserted that she had provided respondent with contact information for a parent resource center approximately halfway between the two locations. She also said that petitioner could help respondent with transportation, but that her attempts to communicate with him were futile, as he would either hang up on her or he would yell at her until she hung up on him. Respondent admitted that he had received the information in December 2021, but he had only contacted the resource center the week prior to his testimony in March 2022. He also admitted that he did not communicate with the caseworker — when she called, he would hang up on her or yell at her until she hung up.
By the time the dispositional hearing concluded, respondent had only recently started engaging in parenting classes and mental health treatment. Although respondent completed substance abuse treatment, he refused to allow petitioner to verify his ongoing commitment to sobriety through randomized drug screens. Respondent also refused to accept any accountability for his multiple violations of the court's orders, and he demonstrated an inability to place the children's well-being above his own impulses. Such an attitude was best illustrated by conspiring with the wife to fake a kidnapping attempt of the youngest child and by exposing the older children to a volatile situation when he invited the wife to his home while they were present. Considering all of the relevant circumstances, Family Court's determination that the older children's best interests are best served by their release to their mother and by requiring respondent's visits to be supervised in a professional setting is supported by a sound and substantial basis in the record (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d at 1080; Matter of Kaitlyn SS. [Antonio UU.], 184 AD3d at 967).
Respondent's remaining contentions, to the extent not [*5]expressly addressed herein, have been examined and found to lack merit.
Egan Jr., J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Petitioner also filed a neglect petition against the wife.

Footnote 2: To the extent that Family Court erred in holding a permanency planning hearing regarding the older children, we note that the court had continuing jurisdiction over the father and the older children (see Family Ct Act §§ 1054 [c], [d]; 1061). In any case, that subsequent permanency order is not on appeal.

Footnote 3: The attorney for the child argues in favor of affirming the order on appeal.

Footnote 4: The counselor explained that the program classified its screens as "inappropriate" when illegal substances were present; an "appropriate" drug screen could include positive results for alcohol or marihuana.